Submitted on briefs July 30, decided August 13, 1912.

## BORTON v. CITY OF PORTLAND.

[125 Pac. 847.]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENT OF BENEFITS—REFUND OF ASSESSMENT.

Portland City Charter, Section 227, as amended June 3, 1907, provided that water mains should be laid and paid for by a special assessment on the property benefited. As amended in November, 1910, it provided for the payment of the cost of laying water mains out of the water fund provided for by charges against consumers of water, and authorized refunds to "all persons who have paid to the city treasurer assessments for the laying of water mains." Prior to this last amendment, a property owner, who had paid an assessment, conveyed the property by a warranty deed. *Held* that, under the express provisions of Section 227, as amended, in the absence of any special agreement, the grantor, and not the grantee, was entitled to the refund.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE BEAN.

This is an action by Luther H. Borton against the City of Portland to recover money paid on an assessment for a water main. From a judgement sustaining the demurrer to plaintiff's complaint and dismissing the action, plaintiff appeals.

Prior to June 9, 1909, the City of Portland acquired a water system by issuing bonds, and from time to time laid water mains. Provision was made that the interest on the bonds, a sinking fund for redeeming the same, and the cost of laying the water mains should be paid for out of the water fund, which was provided for by charges against the consumers of water. Laws of Oregon, Sp. Sess. 1885, pp. 97, 102; Laws of Oregon, Sp. Sess. 1898, pp. 174, 180; Special Laws of Oregon, 1903,

pp. 93, 98. The City charter, as amended June 3, 1907, provided that water mains should be laid and paid for by a special assessment upon property particularly benefited thereby. Portland Charter, § 227. Pursuant to the provisions of this amended section, on June 6, 1910, the city levied an assessment of $69.40 against lot 2, in block 123, West Irvington, then owned by John Rohner, for the cost of laying a water main. On the 1st day of August, 1910, Rohner paid the assessment, and on the 4th of October of the same year he sold and conveyed to plaintiff, by a general warranty deed, said lot 2, "together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, also all my estate, right, title and interests in and to the same, including dower and claim of dower." Section 227 of the city charter was further amended in November, 1910, with the provision that water mains should be laid and paid for, as formerly, out of the water fund. This amendment further provided as follows:

"There may be paid out of said water fund and refunded to all persons who have paid to the city treasurer assessments for the laying of water mains in front of or adjacent to their property, in accordance with the provisions of Section 272 of the charter of the City of Portland, as amended by the act adopted by the electors of said city on the 3rd day of June, 1907, as aforesaid, the moneys, exclusive of the interest, so paid, or that may be paid by them to the city treasurer for the laying of water mains in front of or adjacent to their property; provided, however, that no moneys shall be so refunded on account of the construction of a main or mains until such time as the annual income therefrom shall be equal to 6 per cent of the original cost of said main or mains. Such refund shall be made by warrants drawn by the mayor and attested by the auditor ·when authorized by a vote of the water board of the City of Portland."                                      AFFIRMED.

Sig. 18

For appellant there was a brief with oral arguments by *Mr. Charles H. Abercrombie* and *Mr. Roscoe F. Hunt.*

For respondent there was a brief over the names of *Mr. Frank S. Grant,* City Attorney, *Mr. L. E. Latourette,* Deputy City Attorney, *Messrs. Davis & Farrell,* and *Mr. Wilber Henderson,* with oral arguments by *Mr. Grant* and *Mr. Latourette.*

MR. JUSTICE BEAN delivered the opinion of the court.

The question to be determined is whether or not plaintiff the present owner of the lot, is entitled to collect the refund. This money is to be refunded or paid pursuant to the city charter referred to, which plainly provides that it may be refunded to *persons who have paid the assessments* for the laying of water mains in front of or adjacent to their property. Portland Charter, as amended, § 227. Therefore whatever may be said in regard to the equities in the matter which are strongly urged in favor of plaintiff, the right to receive the money depends upon the law referred to. We are not permitted to determine the equities as between Borton and Rohner, in this action. There is nothing ambiguous or uncertain in the charter as to whom the money should be paid. Plaintiff's grantor, by the conveyance of the land, did not assign the claim in question. In the absence of a special agreement to that effect, the right to receive the amount to be refunded did not pass to plaintiff. Such right did not run with the land. Whatever negotiations or consideration entered into the sale of the land can make no difference in this case. Those are matters of contract between the parties. The grantee, Borton, took what was conveyed by the deed, which was the real estate in its then condition. Certainly Rohner could have assigned this claim, the same as any other chose in action; but it does not appear that he did so. This is a new question in the State.

In the case of *Kaston* v. *Paxton*, 46 Or. 308 (80 Pac. 209: 114 Am. St. Rep. 871), where land occupied by tenants was sold on execution, it was held that the rent, after the date of the sale, but before the redemption, was an assignable thing in action belonging to the execution debtor, and did not pass with a conveyance of the land, unless specially mentioned.

In *Striker* v. *Striker*, 31 App. Div. 129 (52 N. Y. Supp. 729), the plaintiff in the action paid certain assessments upon real estate in the City of New York, levied on account of the opening of Twelfth avenue. Afterwards the legislature authorized the comptroller of the city to refund to the persons, respectively, their executors, administrators, and assigns, the amount paid by such persons as an assessment upon the real estate for the opening of Twelfth avenue. The property was subsequently partitioned between the owners, and the property in question set apart to two of them. It was held, under the staute, that the person who paid the assessments was entitled to recover the money, notwithstanding what devolution of title there may have occurred, or what interest others had in the real estate in question.

It appears in the case of *Bernays* v. *Wurmb*, 4 Mo. App. 231, that plaintiff, who was the owner of a lot, in June, 1866, paid a special tax bill of $325.20, assessed against his lot for a water pipe. In January, 1867, he sold the lot, executing a warranty deed and delivering this special tax bill, with others, to the purchaser. Afterwards, in 1873, the legislature provided for refunding the special taxes paid for water pipe, on presentation of the bills to the persons who had paid the taxes. The purchaser of the lot, without the vendor's knowledge, signed his own name and that of his vendor to an instrument authorizing another to collect the taxes, and through such agent received the money. It was held

that the vendor, not the purchaser of the lot, was entitled to the money.

The case of *Smith* v. *City of Minneapolis,* 95 Minn. 431 (104 N. W. 227), shows that the city ordered a street improved and assessed a certain lot owned by one Dunnegan. The owner paid the assessment, and afterwards sold the lot to plaintiff, representing that the street was to be improved. The city subsequently rescinded its order directing the improvement of such street, and order the money paid by Dunnegan and others to be refunded. Plaintiff sued for the money. The court held that he had no right to it; that the city had a right to abandon the proceedings; and that a conveyance of the lot did not carry with it the right to recover the refund.

In the case of *James* v. *Schmidt* (City Ct. Brook.) 2 N. Y. Supp. 649, it appears that defendant had agreed to purchase certain property from plaintiff. Before closing the deal, a street assessment was confirmed and became a lien upon the property. Defendant refused to go on with the trade, unless the amount of the assessment was deduceted from the price. Plaintiff agreed to this, and the deal was closed. The city afterwards vacated the assessment, and plaintiff sued to recover from defendant the amount so deducted. It was held that plaintiff could not recover.

While all of these authorities are not exactly in point we think that they support the principles above enunciated. The complaint does not state a cause of action, and the demurrer was properly sustained. The judgment of the lower court is therefore affirmed.

AFFIRMED.