Argued May 25, reversed June 8, rehearing denied July 13, 1915.

## NEER v. SALEM.

(149 Pac. 476.)

**Municipal Corporations—Public Improvements—Assessment of Benefits —Refund—Parties Entitled.**

1. Plaintiff sold land to S., agreeing that if a sewer assessment should be declared valid he would pay it. The assessment was paid by plaintiff. The assessment on another sewer district having been declared invalid, throwing the cost on the whole city, and thus imposing an unjust burden on the property in plaintiff's district, a charter provision was adopted authorizing the city to pay the assessment

on both districts and to refund any special assessment paid, and pro-
viding for repayment to all property owners who had theretofore paid
such sums as might have been paid on account of such special assess-
ments levied against property to which such persons held the record
legal title on a specified date subsequent to plaintiff's conveyance.
An ordinance was also adopted providing for the repayment to all
property owners who had paid by themselves or their grantors any
special assessment. The city refunded to S. the amount paid by
plaintiff. *Held*, that plaintiff was not entitled to a refund of the
amount paid by him, as the charter and ordinance confined the right
to refund to those holding the title on the date specified, and, in view
of the fact that S.'s property would be burdened with the increased
general taxation, this plan of refunding did not seem to be inequitable,
and certainly was not so inequitable as to render it obnoxious to law.

Municipal Corporations—Public Improvements—Assessment of Bene-
    fits—Refund—Parties Entitled.
2.  The changed method of paying for the sewer did not in itself,
irrespective of the ordinance, entitle plaintiff to recover back the
amount paid by him.

    [As to meaning of "local improvement" for which special as-
    sessment may be levied, see note in Ann. Cas. 1914B, 542.]

From Marion: PERCY R. KELLY, Judge.

In Banc.  Statement by MR. JUSTICE McBRIDE.

This is an action by James R. Neer against the City
of Salem to recover the sum of $318.97, paid by plain-
tiff as a sewer assessment upon his property in Salem.
The facts are as follows: In 1911, a sewer assessment
was duly levied upon certain lots of plaintiff in North
Salem.  The general area of the proposed improve-
ment included a large part of what is known as North
Salem.  The validity of the assessment was contested
by plaintiff and a large number of other citizens, but
was finally declared valid by this court.  Before this
decision was rendered and on July 5, 1911, plaintiff
sold his property to Hattie P. Stith for the sum of
$3,500, giving a warranty deed therefor and agreeing
with her that if the assessment should be declared
valid he would pay it so as to give her a clear title.
On April 5, 1912, and after the assessment had been
declared valid, plaintiff paid the assessment and took

a receipt therefor. Subsequently, a large sewer assessment for the South Salem sewer district having been declared invalid after the improvement had been completed, the cost of the latter improvement, amounting to about $180,000, was thrown upon the taxpayers of the whole city, whereby the property holders of the North Salem district were placed in a situation where they not only had to bear the whole expense of constructing their own sewers, but also of contributing ratably to the construction of the sewer system of South Salem. To remedy this manifest injustice, the city passed by the initiative a charter providing for the issuance and sale of bonds to pay for both improvements and for refunding sums already paid on either. That portion of the charter bearing upon this subject is as follows:

"The City of Salem shall have full power and authority to issue and sell its general obligation bonds for meeting the cost and expense incident to the laying down and constructing of any and all public sewers and drains heretofore laid or constructed within or without the corporate limits of the city, and for the purpose of paying and redeeming any and all bonds, warrants, or other evidences of indebtedness heretofore issued by the city in the construction of any and all public sewers or drains heretofore laid, built, or constructed and for the payment or refund of any and all public sewer or drainage bonds or warrants now outstanding against said city, and for the payment and refunding of any special assessment levied and paid by any person, firm, association, or corporation on account of the laying and construction of any such public sewers or drains. * * The common council shall repay out of the funds derived from the sale of said bonds to all property owners who have heretofore paid into the city treasury by themselves or their grantors, such sum or sums as may have been from time to time

paid by themselves or their grantors, together with interest, thereon at 6 per cent per annum from the date of payment as entered in the docket of city liens to the date of sale of said bonds, on account of the special assessments levied against any property to which said person held the record legal title on December 2, 1912, the date of the adoption of Section 52 under the initiative laws. The remainder of such funds shall be applied to the payment and redemption of any bonds, warrants, notes, or other evidences of indebtedness outstanding against the City of Salem on account of the construction of any of the sewers and drains mentioned in subdivision or paragraph c of this section."

There was also passed at the same time an ordinance, Section 4 of which is as follows:

"Out of the moneys derived from the sale of said bonds, there shall be repaid to all property owners entitled thereto, who have heretofore paid into the city treasury, by themselves or their grantors, such sum or sums as may have been from time to time paid by them or their grantors on account of special assessments levied for the construction of any of said sewers or drains, together with interest thereon, at six (6) per centum per annum from the date of payment as entered in the docket of city liens to the date of sale of the bonds provided for under Section 52 of the charter, as amended at this election, and this ordinance."

On December 30, 1913, Hattie P. Stith, the grantee of plaintiff, applied to have the amount paid by plaintiff refunded to her. Her application complied technically with every requirement of the charter and ordinance, and the money was paid to her. Plaintiff, claiming that he was the person entitled to the refund, brought this action against the city, and upon trial in the court below received judgment, from which defendant appeals.                    REVERSED.

For appellant there was a brief over the names of *Mr. William H. Trindle,* City Attorney, *Mr. Harold D. Roberts* and *Mr. Rollin K. Page,* with oral arguments by *Mr. Trindle* and *Mr. Roberts.*

For respondent there was a brief over the name of *Messrs. McNary, Smith & Shields,* with an oral argument by *Mr. Roy F. Shields.*

Mr. Justice McBride delivered the opinion of the court.

1. The refunding provisions of the charter and ordinance do not include plaintiff. They expressly confine the right to receive the refund to persons holding "the record legal title on December 2, 1912," at which date, and for a long time previous thereto, the record legal title was in plaintiff's grantee, Hattie P. Stith. With the equity of this plan of refunding we have nothing to do, although as a general rule it would seem to be as fair as any that could be devised. The sewer assessments were not a personal charge against the property owners, but against the lots affected by it when the change was made, so that instead of each lot being liable for its proportionate share of the $180,000, or thereabouts, which was the cost of the improvement, each lot was subjected to its proportionate share of taxation to pay the interest and finally the principal of the $480,000 bond issue provided to pay for all street improvements in the city. We have no means of determining whether or not the property is less burdened by the latter method than the former, as that involves speculation as to the amount of taxable property in the city other than land, the future growth of the municipality, and other factors in the problem not

before us. The idea of the framers of the charter probably was that, as the land would doubtless have to bear a great portion of the burden of taxation under the bonding scheme, it would be more equitable to return the amounts already paid in to the then owners of the land, than to others who had disposed of their landed interests. That the plan will work out exact justice in every instance is not to be expected, but that it will as nearly approximate justice as any other that could have been devised is very probable.

Let us adopt plaintiff's view and apply it to Mrs. Stith's situation. She bought this property with an assessment upon it, the validity of which was in controversy. Plaintiff was so confident the assessment would be declared invalid that he was willing to take $3,600 and assume the risk of paying it. He got his price, lost the suit, and paid the assessment. Now, if the money so paid is refunded to him, Mrs. Stith's property must respond in increased general taxation every year until the bonds which take the place of the original assessment, together with their annual interest, are discharged. It will therefore be seen that there is nothing so inequitable about the method devised by the city as to render it obnoxious to law. Authorities have been cited to the effect that a right to a refund does not run with the land and will not pass with a conveyance thereof. *Borton* v. *City of Portland,* 62 Or. 544 (125 Pac. 847), *Smith* v. *City of Minneapolis,* 95 Minn. 431 (104 N. W. 227), and *Bernays* v. *Wurmb,* 4 Mo. App. 231, are cases relied upon; but an examination shows that the holding was made by reason of the wording of the ordinances under which the cases arose. Thus in *Borton* v. *City of Portland* the ordinance provided for a refund to "persons

who have paid the assessments." In *Smith* v. *City of Minneapolis* the city ordered an improvement and collected from plaintiff's grantor an assessment against his lot to pay for it. Subsequent to the purchase by Smith of the lot so assessed, the improvement was abandoned and the amount of the assessment refunded to plaintiff's grantor. Whereupon Smith sued the city to recover the amount of the assessment. It was held that as he had not paid the money, and no improvement had been made, he was not entitled to recover, and that the right to recover the refund did not run with the land. In *Bernays* v. *Wurmb* the refund was authorized to be paid to "the persons who had paid the taxes," and it was held that a grantee who purchased subsequent to the payment by his grantor was not entitled to the refund. It will be seen from the foregoing cases that the assertion by the courts that the right to the money refunded does not follow the title, but belongs to the person who paid the taxes, is not a statement of a general principle of law, but is based upon the express or implied terms of the particular statute or ordinance there being considered.

2. Counsel for plaintiff also contend that plaintiff is entitled to recover back the amount of the assessment irrespective of the ordinance, because the method of paying for the improvement has been changed; but no case has been cited, and we believe none exists, where this doctrine has been sanctioned by any court. The cases cited to sustain this contention are: *Riker* v. *Mayor of Jersey City*, 38 N. J. Law, 225 (20 Am. Rep. 386); *City* v. *Hill*, 39 N. J. Law, 555; *McConville* v. *St. Paul*, 75 Minn. 383 (77 N. W. 993, 74 Am. St. Rep. 508, 43 L. R. A. 584); and *San Antonio* v. *Walker* (Tex. Civ. App.), 56 S. W. 952. The two New Jersey cases

are to the effect that, where assessments have been voluntarily paid upon a levy afterward declared invalid by the courts, the money so paid may be recovered back.   The Minnesota case holds:

"Where a municipal corporation has, after the commencement of a street improvement and after the collection of a special assessment therefor, wholly abandoned such improvement, a person, whose property has not been benefited in any manner by the work already done, and who has, by judicial proceedings, been compelled to pay the full amount of his assessment, is entitled to recover from the city the amount paid by him, with interest, as upon a failure of consideration."

This case appears to state clearly the conditions of a recovery.

The case at bar may be distinguished in this: (1) The assessment here was finally declared legal by the highest tribunal, whereas in the case cited the assessment proceedings were by stipulation of the parties declared null and void. (2) In the case at bar the improvement had been completed and the plaintiff's property had received the benefit of it before he sold to Mrs. Stith, while in the case cited the improvement had not been completed and plaintiff's property had received no benefit; and, benefit to the property being the consideration, such consideration failed.

While there is testimony that nothing was added to the purchase price on account of the assessment, the same witness also testifies that there was an agreement at the time of the purchase that if it was adjudged legal plaintiff should pay it, so that the lien was considered and entered into the contract of purchase; and it would seem highly improbable that Mrs. Stith would have taken the property at the price she paid with a stipula-

tion that she should pay the assessment if it should be adjudged legal. There would be little justice or equity in compelling her to pay it indirectly by increased taxation on her property merely because the city had changed the method of paying for the improvement.

Considering the whole case made by plaintiff, we conclude that he has shown no right to recover either under the charter and ordinance or otherwise; and the judgment is reversed, and the cause remanded, with directions to enter judgment for defendant.

REVERSED.    REHEARING DENIED.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE BURNETT took no part in the consideration of this case.

---

Rehearing granted November 14, 1914, reargued February 15, former opinion sustained July 13, 1915.