THE STATE ex rel. DUNMORE REALTY COMPANY v. GEORGE E. KIMBALL, City Comptroller, EUGENE H. BLAKE, City Auditor, and BEN JAUDON, City Treasurer, of Kansas City, and KANSAS CITY.

In Banc, March 29, 1926.

1. **MANDAMUS: Voluntary Respondents: Right to Appear.** Where no question is raised in the mandamus suit as to the right of certain persons to appear as respondents and file a return and to brief and argue the case, it will be assumed, for the purposes of the case, without determining their rights in the premises, that they are rightfully in court.

2. **SPECIAL TAX BILL: Refund: Prior Conveyance: Right of Grantee.** A refund by the city of the amount of a benefit assessment paid for a public improvement, which was begun but never completed, should be made to the owner of the lots who paid it, and not to

his grantee under a warranty deed executed before the refund was authorized.

3. ———: ———,: ———: ———: **Ordinance: Mutual Equities.** The city organized a sewer district and issued special tax bills against real estate therein to pay for the construction of the sewers. Relator's lots were within the district and he paid the special tax bill, and conveyed the lots by warranty deed, which contained no reference to the payment of the special assessment. Thereafter the city, in legal manner, issued bonds to pay for the sewers, to take up the unpaid tax bills and to refund payments previously made by owners of property within the benefit district. The ordinance, enacted in connection with the issuance of the bonds for said purpose, declared that "the City Comptroller be and is hereby authorized, upon satisfactory evidence being presented to him by any person of the ownership of any tax bill issued for the payment of the cost of constructing" the sewer, "or of the right to be reimbursed for having paid any such tax bills, to make a written requisition upon the Auditor, in favor of those entitled thereto, for the amount he finds payable to such person." The relator brings suit against the city and its officers to compel a refund to him of the amount of the special tax bills paid by him, and his grantees claim that the refund should be made to them. *Held*, first, that the ordinance is a conclusive direction that the refund should be made to the person who paid the special tax bills, regardless of the ownership of the lots at the time the refunds were authorized; *second*, the right to the refund was not assigned to relator's grantees and was not conveyed by his warranty deed, because not mentioned therein; *third*, the right to the refund did not run with the land, and the grantees cannot claim it, as against the city, on the theory (a) that the increased value or benefit accruing to the lots by the construction of the sewer, in the absence of facts to the contrary, must be presumed to have entered into the consideration paid to relator by them for the lots, and that, by the payment of such consideration, relator was reimbursed for the special assessment paid by him, and (b) that the grantees will be compelled to pay for the construction of the sewers through general taxes levied on all the property of the city to pay the bonds; *fourth*, the refund should be made to relator, who paid the special tax bill; and, *fifth*, whatever equities may exist between relator and his said grantees are not for determination in this suit against the city.

Municipal Corporations, 28 Cyc., p. 1204, n. 98 New.

State ex rel. Dunmore Realty Co. v. Kimball.

Mandamus.

PEREMPTORY WRIT AWARDED.

*Mosman, Rogers & Buzard* and *Ralph S. Latshaw, Jr.,* for relator.

· (1)· The relator, having paid the special tax, is, under the ordinances, entitled to the refund. Bernays v. Wurmb, 4 Mo. App. 231; Savage-Scofield v. City of Tacoma, 56 Wash. 457; Borton v. City of Portland, 62 Ore. 544; Striker v. Striker, 52 N. Y. Supp. 729; State ex rel. v. Mayor of Milwaukee, 15 Wis. 250.  (2)  The right to recover the refund was not conveyed to the Schoolings by the transfer of title.. Bernays v. Wurmb, 4 Mo. App. 231; Borton v. City of Portland, 62 Ore. 544; Smith v. City of Minneapolis, 95 Minn. 431; Cincinnati v. Hafer, 49 Ohio St. 60; 18 C. J. 287; Corning v. Troy Iron Factory, 39 Barb. 529; Lumerate v. Ry. Co., 149 Mo. App. 47; Turner v. Mo. Pac. Ry. Co., 130 Mo. App. 535; Whitecotton v. Ry. Co., 104 Mo. App. 65; Roberts v. Northern Pac. Ry. Co., 158 U. S. 1; Schuylkill Nav. Co. v. Decker, 2 Watts (Pa.) 343; McFadden v. Johnson, 72 Pa. St. 335; In re City of Rochester, 136 N. Y. 83; King v. Trustees St. Patrick's Cathedral, 102 N. Y. 172; In re Opening of Seventh Avenue, 69 N. Y. Supp. 63; Harris v. Kingston Realty Co., 101 N. Y. Supp. 1104; In re Leist, 187 N. Y. Supp. 268.  (3)  As the relator has a clear legal right to the refund, the writ of mandamus should issue. American Mfg. Co. v. Alt, 184 S. W. 1167; State ex rel. Am. Mfg. Co. v. Reynolds, 270 Mo. 589; State ex rel. City of Jefferson v. Hackmann, 287 Mo. 156; State ex rel. Koehler v. Bulger, 289 Mo. 441.

*James S. Summers* for Lora A. and Charles F. Schooling; *Wallace Sutherland* of counsel.

(1)  Lora A. Schooling and Charles F. Schooling, grantees in the warranty deed whereby relator conveyed

its property after paying the special assessment, are proper parties to the action under the pleading filed. State ex rel. Gordon v. Burkhardt, 59 Mo. 75; State ex rel. v. Wurdeman, 166 S. W. 351; State ex rel. v. Cook, 201 S. W. 364. (2) The underlying principle governing the levying of special assessments, to provide for the cost of public improvements, defines such assessments not as taxes, nor as contributions to the general welfare, but rather as consideration paid for an "increased value" given to the property affected. Lockwood v. St. Louis, 24 Mo. 20; Newby v. Platte County, 25 Mo. 258; Garrett v. St. Louis, 25 Mo. 505; Egyptian Levee Co. v. Hardin, 27 Mo. 495; St. Joseph v. Anthony, 30 Mo. 537; Sheehan v. Good Samaritan Hospital; 50 Mo. 155; Farrar v. St. Louis, 80 Mo. 379; Kansas City v. Bacon, 157 Mo. 463; Prior v. Const. Co., 170 Mo. 439; Union Trust Co. v. Pagenstecher, 221 Mo. 128. (3) The "increased value" or benefit accruing to relator's property by payment of his special assessment and assurance of the construction of the Turkey Creek Sewer will be presumed—no facts to the contrary—to have entered into the consideration paid for the property by the Schoolings and that thereby relator was reimbursed for the special assessment paid by him. 23 C. J. 62, sec. 1813, C; Kentucky Bank v. Adams Express Co., 93 U. S. 185; Smith v. Minneapolis, 95 Minn. 431; Neer v. City of Salem, 149 Pac. 476. (4) The language of the ordinances could not be held to govern in this cause. The law and the facts rather than the name of the party designated by the city's own ordinances, should determine to whom the refund should go. An ordinance cannot be made to take away an existing right or impose any unreasonable restraint in the exercise thereof. 28 Cyc. 362; Willock, Municipal Corps., 159; Augusta v. Clark, 124 Ga. 254; McKnight v. Toronto, 3 Ont. 284; Neer v. City of Salem, 149 Pac. 476. (5) The ordinance did not stipulate that the refund in the case at bar should be paid to relator. (6) The School-

ings are entitled to the refund in this case by the terms of the warranty deed. Neer v. City of Salem, 149 Pac. 476.

BLAIR, C. J.—This is an original proceeding in mandamus against the Comptroller, Auditor and Treasurer of Kansas City to compel a refund to relator of the sum of $469.80, paid by it in discharge of a special tax bill issued against certain real estate in Kansas City. Our alternative writ issued and service thereof was acknowledged by respondents, who thereafter filed their return. By leave of court a supplemental return was filed for Lora A. Schooling and Charles F. Schooling, her husband, who claimed to be entitled to such refund by virtue of the fact that they purchased the property from relator after said tax bill was paid and before the refund was authorized. Relator filed its reply to said returns. An agreed statement of facts was filed. The case was argued and submitted upon the pleadings and such agreed statement of facts.

The only question for determination is whether payment of such refund should be made to relator or to the Schoolings. To understand the contentions a brief recital of the admitted facts will be necessary. The property described in the petition was situated within the benefit district of what is known as the Turkey Creek Sewer. This sewer was originally paid for by special assessments against all property within the benefit district of said sewer. Said district did not include all of Kansas City. Relator then owned the property in question. It was situated within the benefit district. Relator paid the special tax bill issued against said property and thereafter conveyed said property to the Schoolings by ordinary corporation warranty deed. No reference was made in the deed to the payment of the special sewer tax bill.

After relator conveyed the property to the Schoolings, such proceedings were had by the council and by the voters of said city, at an election held for the purpose,

that an issue of bonds of said city in the sum of $3,000,000 was authorized to pay for such sewer by taking up unpaid tax bills and by refunding payments previously made by property owners within the benefit district. This was done on the theory that the improvement was a benefit to the whole city rather than only to a part of it. As no question is raised concerning any of the proceedings or the validity of said bonds, we need not notice the various proceedings, except as they may bear on the question before us. Said bonds were issued and sold and the proceeds thereof were paid into the city treasury and an appropriation was duly made for the purpose of taking up unpaid tax bills and to refund to persons entitled thereto any sums paid out by them in discharge of such special tax bills.

The sole reason the Comptroller refused to make a requisition upon the Auditor for the payment of the refund to relator was his inability to determine whether relator or the Schoolings were entitled to receive such refund. The importance of a correct decision upon that question is apparent from the fact, which was stated in oral argument, that there were then 2975 instances where tax bills had been paid and the property against which they had been issued had been conveyed after such tax bills were paid and before the refunds were authorized. The same uncertainty concerning the rights of respective claimants exists in all of these instances.

It is conceded that, if relator is entitled to such refund, our peremptory writ should issue, and if relator is not so entitled, our alternative writ should be quashed and our peremptory writ denied. No question is raised as to the appropriateness of the remedy by mandamus here invoked. Nor is any question raised concerning the right of the Schoolings to appear in this court and file a return, as well as to brief and argue the case. Without passing on their rights in the premises, we will assume, for the purposes of the case, that they are rightfully in court.

313 Mo. Sup.—30.

In brief, it is the contention of relator that it is entitled to such refund under the ordinance, because it paid the special tax bill and that the right to the refund was not conveyed to the Schoolings by the transfer of the title to the real estate. On the other hand, it is the contention of the Schoolings that the increased value or benefit accruing to relator's property by the construction of the sewer, in the absence of facts to the contrary, will be presumed to have entered into the consideration paid to relator by the Schoolings for the property and that, by the payment to it of such consideration, relator was reimbursed for the special assessment paid by it and that the Schoolings are entitled to the refund by reason of their deed from relator, although such refund is not mentioned in such deed. They further contend that the language of the ordinance cannot be held to govern the rights of the parties, even if it provided for the refund to relator as the one who paid the special tax bill.

The proposal to issue bonds for $3,000,000 and to use the proceeds for paying unpaid tax bills and for making refunds to those property owners, who had already paid the special assessments against their property within the benefit district, was initiated by Ordinance 47479. The first and second propositions contained in said ordinance had reference to the issuance of bonds for other sewers. The third proposition was as follows:

"For the purpose of assuming the cost of constructing the Turkey Creek Sewer, and paying for the same, and refunding the assessments heretofore or hereafter collected on account of the same, three million dollars."

Ordinance 47480 provided for an election to authorize such bond issue. The language of the third proposal of said ordinance was as follows:

"To increase the indebtedness of the city by borrowing three million dollars and issuing negotiable general bonds of the city for the purpose of assuming the cost of constructing the Turkey Creek Sewer, and paying for the

same, and refunding the assessments heretofore or here-
after collected on account of the same.

"For increase of debt .................. Yes.

"For increase of debt .................. No."

It is admitted that said proposal was carried at the
election. Ordinance 50683 was thereafter passed. Only
the first paragraph of Section 1 is of importance here.
It reads as follows:

"That the City Comptroller be, and is hereby au-
thorized, upon satisfactory evidence being presented to
him by any person, firm or corporation of the ownership
of any tax bill issued for the payment of the cost of con-
structing the Turkey Creek Sewer in Kansas City, Mis-
souri, or of the right to be reimbursed for having paid
any such tax bills, to make a written requisition upon the
Auditor of Kansas City, in favor of those entitled there-
to, for the amount he finds is payable to such person, firm
or corporation, which amount shall be the face of the tax
bills paid or payable and interest paid or payable there-
on."

Relator contends that the language quoted from
each of said ordinances, and particularly of Ordinance
50683, is conclusive of the intent and direction of the
council that the refund should be made to the persons,
firms or corporations who had paid special tax bills
against their property, regardless of the ownership of
such property at the time such refunds were authorized.
The language of Ordinance 50683 is: "That the City
Comptroller be, and is hereby authorized, upon satisfac-
tory evidence being presented to him by any person, firm
or corporation . . . of the right to be reimbursed *for
having paid any such tax bills,* to make a written requisi-
tion," etc. (Italics ours).

Taking into consideration the language of all of the
ordinances the conclusion inevitably follows that the au-
thority to make reimbursement was confined to the per-
sons who paid the tax bills. The ordinances were in har-
mony with the constitutional amendment which author-

ized the issuance of bonds and the incurring of indebtedness for the purpose of refunding assessments collected on account of the Turkey Creek Sewer. [Laws 1925, pp. 411, 412; Bernays v. Wurmb, 4 Mo. App. 231; Savage-Scofield Co. v. City of Tacoma, 56 Wash. 457; Borton v. Portland, 62 Ore. 544; Striker v. Striker, 52 N. Y. Supp. 729; State ex rel. Allis v. Mayor, 15 Wis. 250.]

We do not understand that the Schoolings make any contention that the language of the ordinance can properly be construed otherwise. Their only contention is that the public improvement, paid for by the special assessment, increased the value of the property in relator's hands and that such increased value was taken into consideration in fixing the price at which relator sold the property to them and passed to them with their purchases, together with their right to the refund, and that the city could not take away such right by providing that the refund should be made to the person paying the special assessment instead of the grantee of such person.

They cite and mainly rely upon Neer v. Salem, 149 Pac. (Ore.) 476. There the facts were that sewer systems were separately provided for North Salem and for South Salem. The assessment for South Salem was subsequently declared invalid. The assessment for North Salem was held valid. Thereafter bonds were issued by the city to pay for both improvements to take care of the injustice existing by reason of the fact that assessments for one improvement were held valid, while assessments for the other were held invalid. Provision was made for a refund to property owners who had already paid their assessments. The charter provision authorizing the city of Salem to make such refund was in the following language:

"The common council shall repay out of the funds derived from the sale of said bonds *to all property owners who have heretofore paid into the city treasury by themselves or their grantors,* such sum or sums as may have been from time to time *paid by themselves or their gran-*

*tors,* together with interest thereon at six per cent per annum from the date of payment as entered in the docket of city liens to the date of sale of said bonds, on account of the special assessments levied against any property to which said person held the record legal title on December 2, 1912, the date of the adoption of Section 52 under the initiative laws." (Italics ours.)

An ordinance to the same effect was also passed. The plaintiff in that case had sold his property in North Salem and had given a warranty deed and had agreed to pay the assessment against his said property, in the event such assessment was held valid. Said assessment was held valid and he paid it. Plaintiff's grantee subsequently claimed the refund and the city paid the money over to her. Notwithstanding such payment, plaintiff, who actually paid the special assessment under the circumstances set out, brought suit against the city to recover the refund. He prevailed in the trial court. The Oregon Supreme Court reversed the judgment upon the ground that plaintiff's grantee was entitled to such refund, because the refunding provisions of the charter and ordinance confined the right to receive the refund to persons holding the record title to the property on December 12, 1912. In that case the refund belonged to the grantee under the plain language of the charter and ordinance, just as it does to the relator in the case at bar under Ordinance 50683 and prior ordinances. There the equities were at least as strongly in Neer's favor as they are here in favor of the Schoolings.

After disposing of Neer's rights by holding that the plain language of the charter and ordinance confined the right to the refund to record owners at the time such refund was authorized, the Oregon Supreme Court discussed the equities of the statute and held that the refund provisions were not altogether unfair to plaintiff under the facts in the case. While that court discussed cases holding that the right to the refund does not run with the land and sought to distinguish such cases from the case then before that court, it cannot be said that the

opinion holds that the right to the refund ran with the land independently of the charter and ordinance provisions. Its judgment was rested squarely upon the charter and ordinance and to that extent the case is an authority supporting relator's contention here.

The case of Smith v. Minneapolis, 95 Minn. 431, is cited and relied upon by the Schoolings in support of their contention that the increased value of the property and hence the right to the refund passed to them under their deed from relator. Relator cites the same case as an authority supporting its contention to the contrary. For this reason, the case should be clearly understood. Dunnegan owned a lot in Minneapolis, in front of which said city had ordered a sidewalk to be constructed. The case went off on demurrer to the complaint. The cost of such improvements was determined in advance of construction and assessed as a tax against the lot. Dunnegan paid the tax and immediately conveyed the lot to Smith under an alleged representation that the sidewalk had been ordered and paid for. The construction of the sidewalk was afterwards abandoned, and the city refunded to Dunnegan the special assessment he had paid. This was after Smith had purchased the lot. A sidewalk was afterwards constructed in front of the lot and a special assessment was made against the lot. Smith demanded that the city pay to him the tax paid by Dunnegan for the sidewalk first ordered built. The city refused to pay. The trial court held that the complaint stated no cause of action against the city. The Supreme Court of Minnesota affirmed the judgment. We quote from the opinion as follows:

"Do these facts constitute a cause of action against the city? The equities, if any, between the plaintiff and his grantor, are not before us for adjudication, for the question before us is limited to an inquiry as to the legal rights of the plaintiff against the city. The alleged inducements offered by the plaintiff's grantor for the purchase of the lot are not relevant to such question in this action against the city, nor is the fact relevant that a sub-

sequent order for the laying of a sidewalk in front of the lot was made in the fall of 1901. There is no alleged connection between the two orders. The only facts, then, relevant to the question before us, are the levying of a special assessment to pay for the proposed sidewalk in front of the lot, a payment of the assessment by the owner thereof, a conveyance of the lot thereafter to the plaintiff, a subsequent cancellation of the order for the proposed improvement, a repayment by the city of the amount paid by the original owner to him, and a demand on and a refusal by the city to pay such sum to the plaintiff. The contention of the plaintiff is to the effect that when the money paid on the assessment for the proposed sidewalk came to the hands of the city the money ceased to be the property of the man who paid it, and the city became the custodian of the fund as a trustee for the owner of the lot, whoever he might be; that the fund was created for a specific purpose, and the property was entitled to the benefit of it. Or, in other words, the city was constituted a trustee of a fund for a specific purpose, and, if it did not execute the purpose, it must see that the proper person gets the money.

"Neither the premise of this argument nor its conclusion is justified by the facts alleged in the complaint. The amount of the assessment was paid by the owner of the lot to discharge a valid lien thereon, created for the purpose of securing payment in advance for the construction of a sidewalk in front of the lot. The owner paid this lien, and conveyed the lot, but the city thereafter annulled the proceedings whereby the lien was created, and decided not to build the walk, whereby the consideration for the payment failed. The city then refunded the money paid on the canceled assessment to the person who paid it. If the assessment had been canceled, but the money not refunded, before the owner conveyed the lot, it would be clear that, as against his grantee, he would have been entitled thereafter to recover and retain the money paid by him. It follows logically that the amount paid was

not, in the hands of the city, a trust fund, which would follow the ownership of the lot. In the case supposed the right to the amount by the grantor would not pass to his grantee by the deed. How, then, could the right to the money paid by the grantor to discharge a lien on his lot for an assessment which was canceled after he had sold the lot pass by his deed? The plaintiff's answer to the question is this: 'The lot was sold with the improvement there, to all intents and purposes, and the city has no right to divert the money from the purpose for which it was placed in its hands and give it back to the party who has then no interest in the lot.' The answer seems equitable and plausible, but it is not so in fact, for the city was not bound to proceed with the proposed improvement, and it is conceded that it might abandon the proposed improvement upon refunding the money collected therefor. It follows that when the plaintiff purchased the lot there was not to all 'intents and purposes' a sidewalk in front of it, nor did he then have any absolute right to have a walk built in front of the lot.

"We hold that the city was legally justified, upon the failure of the consideration for the special assessment, in paying the amount thereof to the person from whom it was received, the plaintiff's grantor, and that the complaint does not state a cause of action."

The Schoolings contend that the reasoning of the Minnesota Supreme Court supports their contention here because it was said that Smith's contention "seems equitable and plausible," although it was not held to be equitable and plausible under the particular facts in that case. The Schoolings argue that the Minnesota court would have held Smith entitled to the refund if the sidewalk had been constructed as first ordered and the method of payment had been changed, as in this case, and the money had been refunded to Dunnegan. We cannot agree with this contention. The Minnesota court held that such considerations were not good as against the city. It held

that the equities between Smith and Dunnegan were not before it for adjudication in that case.

The Schoolings do not contend that there was any express assignment of the right to the refund. They work out their claim to the refund in this wise: The sewer was built and added an increased value to the property. That increased value passed to them under their deed from relator. Relator paid the tax bill before the transfer and presumably added the amount of his payment to the consideration as increased value and thus collected from the Schoolings what he had paid for the sewer. Now, because they are to be taxed to pay for such sewer and are thus compelled to pay for it a second time, they contend that they are in justice and equity entitled to the refund to reimburse them for the additional taxes they will now have to pay. Now what will the Schoolings have to pay for the sewer? Clearly a certain rate upon the assessed value of their property as general taxes to help pay the interest on the bonds and create a sinking fund for their retirement. The total amount of taxes so paid by them before the sewer bonds are all retired bears no necessary relation to the amount paid by relator in settlement of the special tax bill. There are so many uncertain elements to be considered that it is impossible even to approximate the extent to which the taxes of the Schoolings will be increased on account of this bond issue. The valuation of the property for the purpose of general taxation may change from year to year because of changing conditions. The buildings, if any are upon the property, may be totally destroyed, greatly reducing the assessed valuation of the property and lessening the annual tax upon the property apportionable to the bonds. Then property in other sections of the city may increase more rapidly in value and the assessed valuation thereof increase in like proportion and thereby lessen the proportion of general taxes chargeable to the property of the Schoolings. The fact that the sewer bond tax will be applied to all property in the city, and not to real estate

alone, also tends to complicate any calculation sought to be made. So also does the fact that the tax for the bonds is spread over real estate throughout the entire city, while the special tax bill was assessed against the property now owned by the Schoolings in its due proportion to other real estate within the limited benefit district. And what of the fact that other property of the relator must now contribute its due proportion in taxes to pay for the sewer benefiting the property of its grantees?

These considerations are mentioned merely to show the insuperable difficulties in the way of reaching a conclusion that the right to the refund runs with the land and passed to the Schoolings under their deed from relator. To permit the Schoolings to take down the refund when the amount they may have to pay on account of the sewer bonds may be less than the refund would manifestly be unfair.

In Borton v. Portland, supra, a water main had been paid for by special assessment. After plaintiff had purchased the real estate from the man who paid the assessment the water main was paid for out of the water fund by refunding the amount of the special assessment to plaintiff's grantor. Naturally this cast a heavier burden of taxes upon plaintiff's property. He was denied recovery because he was not the owner of the property who paid the special assessment; to whom the ordinance directed that the refund should be paid. In disposing of the case the Oregon Supreme Court said:

"The question to be determined is whether or not plaintiff, the present owner of the lot, is entitled to collect the refund. This money is to be refunded or paid pursuant to the city charter referred to, which plainly provides that it may be refunded to *persons who have paid the assessments* for the laying of water mains in front of or adjacent to their property. [Portland Charter, as amended, Sec. 227.] Therefore whatever may be said in regard to the equities in the matter which are strongly urged in favor of plaintiff, the right to receive the money

State ex rel. Dunmore Realty Co. v. Kimball.

depends upon the law referred to. We are not permitted to determine the equities as between Borton and Rohner, in this action. There is nothing ambiguous or uncertain in the charter as to whom the money should be paid. Plaintiff's grantor, by the conveyance of the land, did not assign the claim in question. In the absence of a special agreement to that effect, the right to receive the amount to be refunded did not pass to plaintiff. Such right did not run with the land. Whatever negotiation or consideration entered into the sale of the land can make no difference in this case. Those are matters of contract between the parties. The grantee, Borton, took what was conveyed by the deed, which was the real estate in its then condition. Certainly Rohner could have assigned this claim, the same as any other chose in action; but it does not appear that he did so.''

In Smith v. Minneapolis, supra, appears the following sentence which we have already quoted: ''It follows logically that the amount paid was not in the hands of the city, a trust fund, which would follow the ownership of the lot.'' Numerous other cases are recited by relator, but they do not fit the facts in the case at bar so closely as do the facts in the cases we have cited. The Schoolings cite no authority to the contrary which can be said to be in point.

The conclusions necessarily reached are that the ordinances designate the property owner who paid the special assessment as the person to receive the refund and not the person owning the particular property when the refund was authorized; that the right to the refund was not assigned to the grantee and was not conveyed under the warranty deed because not mentioned therein and that such right did not run with the land.

It follows that relator and not its grantee is entitled to receive the refund from the respondent city officials. Whatever equities, if any, there may be between relator and the Schoolings are not for consideration and determination in this case. The Schoolings have failed to

establish their right to such refund as against the city. Under the plain terms of the city ordinance, relator is entitled to such refund, so far as Kansas City is concerned. Let our peremptory writ go accordingly. All concur, except *Otto, J.,* not sitting.