On or about September 20th, 1929, Harris Brustin the defendant purchased from Krikor Gabriel lots 22 and 23 in block 392 in the township of North Bergen, New Jersey, subject to any and all assessments. On February 10th, 1927, the township levied assessments for local improvements on lot 22 for $1,577.38; on lot 23 for $1,577.36. Gabriel, before conveying the lots to Brustin, appealed the assessments to the Hudson county circuit court. On February 4th, 1930, while the appeal was pending, Brustin paid the said assessments with the interest accruing thereon; viz., $1,905.78 on lot 22, and $1,905.76 on lot 23.
On August 22d 1930, Brustin by warranty deed conveyed the lots to the complainant. On July 22d 1932, the Hudson county circuit court, by order, reduced the assessment on lot 22 from $1,577.38 to $1,183.04, and on lot 23 from $1,577.36 to $1,182.04. The complainant brings this suit for a refund of the excess payment, or the difference between the amount paid by Brustin and the sum assessed by the circuit court. Brustin answers and counter-claims. He denies the complainant's allegations that overpayment, in effect, follows the title or "attaches to or is appurtenant to the land;" he maintains he is the owner of the excess sum. The township concedes its position is practically in the nature of a "stakeholder," and, in effect, says "we must rebate the excess amount, but to whom?"
In Mayor, c., of Jersey City v. Riker, 38 N.J. Law 225, Chief-Justice Beasley said: "The assessment being vacated by direct judicial action, the law raises an assumption to refund the money which can no longer be honestly retained. An assessment, in this respect, is analagous to a judgment, and when a judgment is reversed the defendant is restored, as nearly as practicable, to his original condition, and for this purpose a writ of restitution goes." The principle thus enunciated was followed in the case of Ocean Grove, c., Association v.Bradley Beach, 91 N.J. Law 364; affirmed, 93 N.J. Law 249. In the cases cited, the judgments favored the owners of the properties, they having paid the taxes. In *Page 198 
the instant case the complainant, the owner of the lots, did not pay the assessments; he acquired the property free and clear of them, approximately five and a half months after they were paid. There is no evidence whatever to indicate that he was to gain or lose on the outcome of the appeal from the assessments — he appeared to have nothing at stake. He, apparently, bought the properties as they stood, benefited by the improvement, and without the burden of an assessment. Brustin assumed the burden — the assessments; complainant acquired the benefit — the improvements. Since he assumed no burden; holds no evidence of claim, but enjoys the benefits arising from the improvements, where then does his title to Brustin's expenditures lie? I fail to find it — none appears to exist. Chief-Justice Beasley, inMayor, c., of Jersey City v. O'Callaghan, 41 N.J. Law 349, speaking for the court of errors and appeals (at p. 351) said: "Nothing but injustice would be served by an admission of the doctrine that when a tax had been adjudged to be illegal, the moneys unjustly collected under it can be retained." That observation can be effectively applied to the instant case. If the excess money were retained by the town who would suffer the resulting injustice of it? I cannot see upon what theory the complainant would. If the township has no right to it, I cannot understand by what process of reasoning the complainant could be said to have any claim to it. The complainant did not pay the assessment and the right to the excess payment was not assigned to him; nor was it conveyed to him under the deed of warranty he received from Brustin the defendant; he therefore has no title to it.
In State, c., Dunn Realty Co. v. Kimball, 313 Mo. 460;282 S.W. Rep. 30, the court awards the refund to the person who paid the tax and, among other things, said:
"The sewer was built and added an increased value to the property. That increased value passed to them under the deed from relator. Relator paid the tax bill before the transfer and presumably added the amount of his payment to the consideration as inrceased value and thus collected from the Schoolings [grantee] what he had paid for the sewers. *Page 199 
"The conclusions necessarily reached are that the ordinances designated the property owner who paid the special assessment, as the person to receive the refund, and the person owning that particular property when the refund was authorized; that the right to the refund was not assigned to the grantee and was not conveyed under the warranty deed because it was not mentioned therein, and that such right did not run with the land.
"It follows that the relator and not the grantee is entitled to receive the refund from respondent city officials. Whatever equities, if any, there may be between relator and the Schoolings [grantees] are not for consideration and determination in this case."
The township is chargeable with interest from the time the assessments were paid. Mayor, c., of Jersey City v.O'Callaghan, supra. In the case last cited, the court said: "Interest proper arises whenever money is lent or foreborne with an understanding, express or implied, that an equivalent shall be given for its use, and in such case the rate of interest agreed upon, or, if none such be agreed upon, the rate then existing by law, is, in the absence of any new agreement, the rate to be paid until the return of the money." Gabler v. Elizabeth, 1N.J.L.J. 156.
One who paid the assessment is the one entitled to a refund, even though title to the property may have been conveyed to another. Page Jones tit. "Taxation by Assessment" § 1494.Pinchbeck v. Mayor, c., of New York, 12 Hun 556; Schultze v.Mayor, c., of New York, 103 N.Y. 307; 8 N.E. Rep. 528. A vendee of one who has paid the assessment cannot recover the amount paid by his vendor. Smith v. City of Minneapolis,95 Minn. 431. In the case of American Brake Shoe, c., Co. v.New York Railways Co., 291 Fed. Rep. 112, the court said: "The sovereign, realizing that sound governmental policy required that there should be a refund of a tax collected upon an illegal, erroneous, or unequal assessment, provided the procedure by which the wrongful tax could be collected back. Under those provisions, the proper authorities were directed to audit and allow to the petitioner or other *Page 200 
person who shall have paid tax * * * and cause to be paid to such petitioner or other person paying such tax. Obviously the test is, `who paid the tax?'" Since Brustin paid the assessment, I cannot see by what color of right the complainant is entitled to the refund. I shall advise an order requiring the township to refund the excess payment to the defendant Harris Brustin, with interest from the date of payment. *Page 201