Mr. Justice McWilliams
delivered the opinion of the Court.
In 1955 the Board of County Commissioners of Arapahoe County adopted a resolution (which will hereafter be referred to as the Resolution), providing that “the sum of $125 per dwelling unit shall be collected by the Building Inspector from and after the effective date of this resolution in addition to the regular building permit fee heretofore collected, said funds ... [to be] used for the acquisition of school sites and for the construction and operation of schools within the district from which said funds originate.”
Pursuant to the Resolution, Perlmutter’s, Inc., a corporation engaged in the business of acquiring land and building houses thereon, paid under protest to the building inspector a total of $30,750, covering 246 dwelling units at the rate of $125 per unit.
Subsequently the aforementioned Resolution was declared to be unconstitutional by the district court of Arapahoe County, to which judgment no writ of error ever issued. The trial court in addition to its declaration that the Resolution was invalid also decreed that “the funds heretofore collected under this regulation” should be returned “to the rightful owners,” and pur *151 suant to Rule 53 (c), R.C.P. Colo., appointed a master and ordered that all monies collected under this Resolution be transferred to the master.
According to the order of appointment, the master’s duties inter alia were “to make distributions of the said school permit fee fund to those persons and claimants as are, in the best judgment entitled to the same, in all cases in which no contest is involved . . . [but] ... to submit all cases in which any objection has been raised to his findings to this Court together with such findings . . .”
The present writ of error poses a dispute between Perlmutter’s, Inc. and 120 individual claimants as to whether Perlmutter’s, Inc. or the 120 individuals are the “rightful owner” of the sum of $15,000 held by the master.
Perlmutter’s, Inc. bases its claim thereto on the fact that it paid under protest the particular sum involved to the Budding Inspector, said amount representing money paid by Perlmutter’s, Inc. to the Building Inspector, pursuant to the Resolution, on 120 dwelling units at the rate of $125 per unit. The 120 individual claimants are in each instance persons who, by warranty deed executed and delivered prior to the time the Resolution was invalidated, purchased from Perlmutter’s, Inc. a “dwelling unit” upon which Perlmutter’s, Inc. had theretofore paid the $125 called for by the Resolution. The 120 individuals claim the $15,000 on the ground that under “equitable principles the rights [to the refund] flowed” to them by virtue of their several deeds of warranty.
Upon hearing the master ruled that Perlmutter’s, Inc. was the “rightful owner” of the $15,000. However, the trial court “reversed” its master and decreed that the 120 individual claimants, and not Perlmutter’s, Inc., were entitled to the $15,000, each to be entitled to his or her proportionate share thereof, i.e., $125. By writ *152 ■of error Perlmutter’s, Inc. seeks reversal of the judgment.
The hearing held by the master established the following background information:
1. That each of the 120 individual claimants purchased a dwelling unit from Perlmutter’s, Inc., and on each such unit Perlmutter’s, Inc. had theretofore paid into the so-called “school permit fee fund,” under protest, the sum of $125;
2. That shortly after the Resolution with which we are here concerned was adopted by the Board of County Commissioners, Perlmutter’s, Inc. offered to “give” to the school district in which its property was situate .some 15 acres in lieu of payment of the additional $125 per dwelling unit, which “offer” was refused;
3. That thereafter Perlmutter’s, Inc., acting through its wholly owned subsidiary D.O.M. Inc. and the school ■district in which the subject properties were situate, ■entered into a written agreement, each party thereto being fully cognizant of the fact that the Resolution was to be challenged in court;
4. That by this agreement Perlmutter’s, Inc. agreed to pay under protest $125 per dwelling unit into the “school permit fee fund” with the understanding that if the Resolution was later declared unconstitutional and the moneys returned, it would then convey by way of •a “gift” to the school district some 15 acres;
5. That by the same agreement the school district ■agreed that if the Resolution was held to be valid, then "the school district would purchase the said 15 acres at the rate of $3,000 per acre;
6. That Perlmutter’s, Inc. as a matter of its internal bookkeeping did not “charge” the $125 sum to any of the 120 individual claimants who purchased “dwelling units” from Perlmutter’s, Inc., but disbursed the payments from a separate account;
7. That the warranty deeds from Perlmutter’s, Inc. to each of the 120 individual claimants were in the usual *153 form and none made any reference to, or mention of, the so-called “school permit fee fund”; and
8. That when the Resolution was declared unconstitutional Perlmutter’s, Inc. caused the aforementioned 15 acres to be conveyed to the school district without any consideration therefor, but has not received the money paid by it under protest into the “school permit fee fund.”
Several of the individual claimants testified at the hearing before the master and it was stipulated that their testimony was to be deemed as representative of all non-appearing claimants. All agreed that when each purchased a house from Perlmutter’s, Inc. and received a warranty deed therefor there was never any intent on their part that by so doing they acquired any right to receive moneys from the “school permit fee fund” if the Resolution under which these moneys had previously been collected was later declared invalid. All agreed that they were primarily concerned that the property purchased be “free and clear” and there was no thought on their part that they would succeed to any right on the part of Perlmutter’s, Inc. to the return of such money. Several claimants conceded that their settlement sheets did not reflect that they were “charged” for the $125 fee.
As noted above, the master found that Perlmutter’s, Inc. was entitled to the money, apparently on the ground that such was the “equitable” thing to do and that to hold to the contrary would be to impose a “double-economic burden” on Perlmutter’s, Inc., i.e., it would then have failed to get back the money paid by it under protest and at the same time had already “given” certain acreage to the school district.
The trial court later rejected the theory of a “double economic burden” on Perlmutter’s, Inc. and decreed that the 120 individual claimants were entitled to the $15,000 on the basis that “absent a reservation by a *154 seller in his warranty deeds to purchasers, the School Permit Refunds are payable to such purchasers.”
Resolution of the present controversy involves not so much a search for the so-called “equities” of the case, but a proper determination of the legal rights of the parties. Perlmutter’s, Inc. paid the fee, and is thus entitled to the refund thereof, unless it later assigned its right thereto. The several warranty deeds from Perl-mutter’s, Inc. to the 120 individual claimants do not constitute such an assignment. No deed makes any mention of any right to a refund from the “school permit fee fund.” The grantor, Perlmutter’s, Inc., and the 120 individual grantees agreed that in the execution and delivery of the 120 deeds there was an absence of intent on the part of all concerned that Perlmutter’s, Inc. was thereby assigning its right to the refund of the money paid by it under protest to the building inspector of Arapahoe County pursuant to the Resolution which was later declared to be invalid. Such being the case, Perl-mutter’s, Inc. is clearly entitled to the refund of the $15,000.
Our attention has not been directed to any reported case “on all fours” with the instant one. However, certain cases are deemed to be helpful, even though they involve a “tax” or “special assessment,” and not a “fee.” So, in Boyer Bros. v. Board of County Commissioners of the County of Routt, 87 Colo. 275, 288 P. 408, a land owner who had previously paid under protest a tax levied on his property assigned his property to a trustee for the benefit of his creditors. When the taxing statute was later declared to be invalid, a dispute arose as to who was entitled to the return of the money thus paid. The landowner was held to be the “rightful owner” of the money paid by him pursuant to the void tax statute on the ground that he paid it and had not thereafter assigned his right to a refund thereof, his assignment for the benefit of creditors not having specifically men *155 tioned his right to a refund of the taxes paid under the void assessment.
City of Grand Rapids v. Iosco Land Co., et al., 273 Mich. 613, 263 N.W. 753, presents a somewhat analogous factual situation where the owner of realty paid a special assessment designed to raise revenue for a street widening program and later by warranty deed conveyed title to the realty to Iosco Land Co. Several years later the state legislature enacted legislation which provided for “refunding to the taxpayers ... of the special assessment.” A dispute arose as to who had the right to the refund, the grantor who paid the assessment or his grantee, the latter contending that the grantor by the execution and delivery of the warranty deed had thereby assigned his right to a refund. In rejecting this line of reasoning and holding that the grantor was entitled to the refund, the Supreme Court of Michigan stated:
“The deed of the premises did not constitute an assignment to the grantee of this right. The deed, while conveying the hereditaments and appurtenances, gave no indication that the transfer of the right to future refunds of taxes or assessments previously paid was even contemplated. In Robertson v. Singleton, 156 Miss. 220, 125 So. 421, 422 the court had before it conflicting claims of a grantor and his grantee to a refund of a tax previously paid by the grantor. The court said: ‘At the time of the transaction, neither party thought there would be any refund, and neither doubted the validity of the paving as an original charge against the property, but it had been paid and discharged, and the appellees [grantees] received all they had bar gained for under this deed in securing the land free from liens or charges. * * * It is true that Robertson [grantor] received more in the aggregate than he expected to receive, but this fact does not constitute any equity in favor of appellees [grantees].’ ”
In Marano v. North Bergen TP, et al., 116 N.J. Eq. 196, 172 A. 817, a similar dispute arose over the right to a *156 refund for an over-assessment, the grantor having paid the special assessment but the grantee claiming that the grantor’s right to the refund was conveyed to him under a deed of warranty. In upholding the right of the grantor to the refund the Court of Chancery of New Jersey stated that the “one who paid the assessment is the one entitled to the refund, even though title to the property may have been conveyed to another.” See, also, In re Sixth Avenue Elevated R.R., 55 N.Y.S. (2d) 236.
The individual claimants point out that each of the foregoing cases involves a “tax” or a “special assessment” and argue that these authorities therefore have no applicability to the instant case where a “fee” is involved. Insofar as the issue here to be resolved is concerned, the distinction is one without a difference. Certainly the rationale announced therein is equally applicable to the present controversy. If a grantee under his warranty deed has thereby acquired no right to the refund of an unlawful tax theretofore paid under protest by his grantor, it would seem to logically follow that he would not have the right to a refund of an unlawful “fee” also paid under protest by his grantor.
The judgment is therefore reversed, and the cause remanded with direction to enter judgment in favor of Perlmutter’s, Inc.
Mr. Justice Moore and Mr. Justice Hall not participating.